FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

U.S. DISTRICT COURT
N DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BOYKO |
| v. | ) | CASE NO. 1:18 CR 759 |
| | ) | Title 18, Sections 666(a)(1)(A) |
| KHALIL EWAIS, | ) | and (a)(1)(B), 981(a)(1)(C), |
| ABDELJAWAD EWAIS, | ) | 1001(a)(2), 1343, and 1951, |
| | ) | United States Code; Title 26, |
| Defendants. | ) | Section 7206(1), United States |
| | ) | Code; Title 28, Section 2461(c), |
| | ) | United States Code |

General Allegations

At all times relevant to this Indictment, unless otherwise specified:

1.      Defendants KHALIL EWAIS and ABDELJAWAD EWAIS were residents of
Cleveland, Ohio.

2.      The City of Cleveland (hereinafter "the City") was a political subdivision within
the state of Ohio.  The City was a government organization as defined by Title 18, Section
666(d)(2), United States Code, and during each one-year period from April 2015 to the present,
received benefits in excess of $10,000 under a Federal program involving a grant, contract,
subsidy, loan, guarantee, insurance, and other forms of Federal assistance.

3.      The Mayor's Office of Capital Projects ("MOCAP") was a Department in the
City, comprising three divisions: (1) Division of Architecture and Site Development; (2)
Division of Real Estate; and (3) Division of Engineering and Construction.  Among other
responsibilities, the Division of Engineering and Construction managed and oversaw
construction for the City's roadways, streets, bridges, and sidewalks.

4.      KHALIL EWAIS worked for MOCAP as the Section Chief of Construction in the Division of Engineering and Construction.  KHALIL EWAIS began his employment with the City in or around 2006 and worked in various other engineering positions before becoming a Section Chief.

5.      In his position as Section Chief of Construction, KHALIL EWAIS had various responsibilities, including managing MOCAP construction projects for the City, overseeing construction inspectors who inspect work on the City's roads, bridges, and sidewalks, and enforcement of the permit program.  As an agent and employee of the City, KHALIL EWAIS had a fiduciary duty to act in the best interests of the City and its citizens.

6.      In addition to his position with the City, KHALIL EWAIS also owned and operated Pioneer Engineering, Inc. (hereinafter "Pioneer Engineering"), a private engineering and consulting business.  In his capacity as owner and principal of Pioneer Engineering, KHALIL EWAIS did work for private clients in and around Cleveland, Ohio.

7.      KHALIL EWAIS and ABDELJAWAD EWAIS owned a commercial property in Cleveland, Ohio, located at the corner of Storer Avenue and West 62nd Place, which housed the Captain's Grill, a restaurant, and another business.  The property was assigned the street addresses of 6102 and 6104 Storer Avenue, Cleveland, Ohio.  The property also included a parking lot adjacent to West 62nd Place.

8.      West 62nd Place was a short public street, resembling an alleyway, off Storer Avenue, next to the Captain's Grill parking lot at 6102 and 6104 Storer Avenue.  It was approximately 178 feet long and 12 feet wide, and ended in a dead end.

9.      KHALIL EWAIS, ABDELJAWAD EWAIS, and other members of their family also owned a number of residential rental properties in and around the Cleveland, Ohio area. KHALIL EWAIS and ABDELJAWAD EWAIS charged their tenants rent, which KHALIL EWAIS and ABDELJAWAD EWAIS collected mostly in cash. KHALIL EWAIS, ABDELJAWAD EWAIS, and their family members co-mingled their rent proceeds in bank accounts for purposes of transferring large sums of money to a foreign bank account.

10.     Company 1 was a full service provider of road and surface construction services, including asphalt pavement installations and rehabilitations of federal and state highways, airports, county roads, city streets, private and public subdivisions, and parking lots, as well as services ancillary to such work. Company 1 operated in and around the Cleveland, Ohio area. Company 1 performed work for private and public clients, including the City.

11.     Contractor 1 was an owner of Company 1 and managed Company 1's day-to-day operations.

12.     Company 1 bid on jobs with the City. In or around April 2015, Company 1 was awarded the City Wards of Cleveland Public Improvement By Requirement Contract (hereinafter "Requirement Contract"). As part of the Requirement Contract, Company 1 was contracted to perform most or all of the resurfacing of residential streets in certain wards of the City for a period of two years. Company 1 bid approximately $5,822,397 to win the Requirement Contract for the resurfacing and related work.

13.     In his capacity as Section Chief of Construction, KHALIL EWAIS oversaw all of the work Company 1 did for the City under the Requirement Contract. KHALIL EWAIS had input into whether Company 1 received additional contracts with the City. Company 1 could not receive payment from the City for their work until KHALIL EWAIS certified that Company 1

had completed the job to the appropriate specifications.  KHALIL EWAIS had the authority to

order Company 1 to complete "corrective work," which would cost Company 1 additional time

and money, before Company 1 could be paid by the City.  KHALIL EWAIS could also use his

official position to help Company 1 obtain faster payment for their services.

COUNT 1
(Extortion Under Color of Official Right, 18 U.S.C. § 1951(a))

The Grand Jury charges:

14.    The allegations contained in paragraphs 1 through 13 are realleged and

incorporated by reference as if fully set forth herein.

General Allegations

At all times material to this Indictment:

15.    The City's activities affected interstate commerce.

16.    Company 1's activities affected interstate commerce.

The Captain's Grill Parking Lot Paving Job

17.    In or around August 2016, KHALIL EWAIS contacted multiple companies,

including Company 1, about paving the parking lot adjacent to Captain's Grill, one of the

properties he and ABDELJAWAD EWAIS owned.  He obtained quotes ranging from

approximately $48,923 to $59,152.

18.    On or about August 9, 2016, Estimator 1, an employee of Company 1, prepared

and sent KHALIL EWAIS Company 1's bid for the work to be performed on the parking lot,

which included milling and paving work.  This initial estimate was $48,923.80 and was

calculated using industry standard prices, using the specifications provided by KHALIL EWAIS.

Contractor 1 reviewed and approved this estimate before it was sent to KHALIL EWAIS.

4

19.    On or about August 10, 2016, KHALIL EWAIS contacted Contractor 1 about Company 1's estimate for the parking lot and told him, "I need to be in the $25K range," and provided proposed reductions to the industry standard unit prices, resulting in a revised estimate of approximately $25,563.

20.    On that same date, within minutes, Contractor 1 responded to KHALIL EWAIS, telling him, "I will do the job for a lump sum of $26,000." Contractor 1 did not consult with Estimator 1 before sending KHALIL EWAIS this reduced estimate.

21.    At the same time that Company 1 agreed to perform the Captain's Grill parking lot job for KHALIL EWAIS at a reduced rate, Company 1 was continuing to perform work on numerous other jobs, including work on the Requirement Contract. Most of the other jobs Company 1 was working at that time were much larger than the Captain's Grill parking lot. Because Company 1 was so busy with their larger jobs, Company 1 hired sub-contractors, Contractor 2 and Contractor 3, to complete the work at KHALIL EWAIS's parking lot.

22.    While installing catch basins, Contractor 2 learned that a portion of the sewer connection between the private parking lot and one of the adjoining streets (West 61st Street) was broken and would need to be repaired.

23.    Even though the parking lot work was a private job for KHALIL EWAIS's benefit, KHALIL EWAIS used his position with the City to categorize the roadway work and connection fix as a part of the "E&C Requirement Contract."

24.    On or about October 25, 2016, Contractor 3 began work on the Captain's Grill parking lot. During Contractor 3's work on the parking lot, Company 1, at the direction of KHALIL EWAIS, instructed Contractor 3 to expand the scope of the job to include milling and paving a portion of West 62nd Place.

25.    On or about November 5, 2016, Contractor 3 completed the work on the parking lot and West 62nd Place.  At the direction of KHALIL EWAIS, Contractor 3 connected West 62nd Place to the parking lot.

26.    Company 1 spent approximately $81,534 to complete the work at the Captain's Grill parking lot.  KHALIL EWAIS only paid Company 1 approximately $31,336, and Company 1 did not request any further payment from KHALIL EWAIS.

The 2015 Requirement Contract

27.    The City was divided into 17 different wards.  Each ward was represented by a member of the Cleveland City Council.

28.    At all relevant times, West 62nd Place and 6102 and 6104 Storer Avenue were located in Ward 3.

29.    The City had a certain amount of funding allotted each year to resurface (i.e., repair, often by fully repaving) residential streets throughout the City.  In 2016, the budget for the Residential Ward Resurfacing Program ("the resurfacing program") was approximately $10 million, which was allocated among the 17 wards.  The resurfacing program was divided between the Department of Public Works, which handled some wards, and MOCAP, which handled the other wards.  While the Department of Public Works largely performed resurfacing work in its assigned wards with its own staff and equipment, MOCAP contracted out the resurfacing work in its assigned wards to private contractors.

30.    The Requirement Contract encompassed most or all of the paving work for MOCAP's wards.  After a bidding process, Company 1 was selected for the Requirement Contract, which meant that Company 1 performed—and was compensated by the City for—all of the repaving and repair work they completed.

31.     MOCAP's Division of Engineering and Construction oversaw the Requirement Contract.

32.     In preparation for the resurfacing program, the City, through a contractor, endeavored to evaluate and rate the condition of all of the streets in the City, and assigned letter grades to the vast majority of eligible streets.  West 62nd Place did not receive any grade.

33.     After the street ratings were completed, the City's Pavement Management Group met to discuss which of the lowest-rated streets in each ward to recommend to the Cleveland City Council members to include as part of the resurfacing program.  The Pavement Management Group comprised two City Directors, staff from the Department of Public Works' Division of Streets, and staff from MOCAP's Division of Engineering and Construction, including KHALIL EWAIS.

34.     In or around December 2015, KHALIL EWAIS sent the Pavement Management Group, and others, a proposed list of streets for the 2016 resurfacing program.  This list did not include West 62nd Place.

35.     In or around March 2016, a Director with the City and a member of the Pavement Management Group sent the other members, including KHALIL EWAIS, a final draft list of streets to be included in the 2016 resurfacing program.  This list did not include West 62nd Place.

36.     In or around April 2016, KHALIL EWAIS sent an employee of Company 1 the final list of streets that were included in the 2016 resurfacing program.  This list did not include West 62nd Place.

37.     In or around April 2016, the Pavement Management Group sent each of the 17 City Council members the list of streets selected in their ward as part of the 2016 resurfacing

program.  The list sent to the Councilperson for Ward 3 included five streets, but West 62nd

Place was not one of them.

38.     After the Pavement Management Group sent the City Council members the final

list of streets to be included in the resurfacing program, a street could only be replaced if certain

conditions were met, some of which included (1) the new street was estimated to cost the City

the same amount as, or less than, the original street; (2) it was requested by a Councilperson; and

(3) it was the same letter grade or worse than the original street.  If those conditions were met,

the City Directors could potentially approve the replacement street.

39.     A street could not be added without input from the Councilperson for the ward at

issue and the approval of the City Directors.  Neither KHALIL EWAIS, his direct supervisor, nor

an individual Director had the unilateral authority to add a street to the resurfacing program.

### KHALIL EWAIS Creates Task Orders for West 62nd Place

40.     A Task Order for the City's Requirement Contract was a document created for the

repaving or resurfacing of a specific street, or the installation of corner ramps that comply with

the requirements of the Americans with Disabilities Act of 1990 (hereinafter, "ADA ramps").  A

Task Order indicated the task number, the scope of work, the funding number, and the estimated

cost to the City.

41.     A contractor typically did not begin work on a street until they received a signed

Task Order, as the Task Order was the document that represented the City's request that the

work be performed and the City's representation that it would pay for the work to be performed.

42.     KHALIL EWAIS did not have authority to create a Task Order for a street that

had not been authorized by the relevant Councilperson and the Directors.

43.     In or around October 2016, KHALIL EWAIS, on his own accord, created a Task Order for the resurfacing of West 62nd Place. Task Order #72A (later changed to #81A) was the Task Order for the paving portion of the West 62nd Place project and had an estimated total cost to the City of $9,363.70. KHALIL EWAIS also caused another Task Order, Task Order #99B, to be created for the ADA Ramps on the corners of the intersection of West 62nd Place and Storer Avenue. This Task Order had an estimated total cost to the City of $5,898.00.

44.     On or about October 25, 2016, Contractor 3 began working for Company 1 on the Captain's Grill parking lot adjacent to West 62nd Place, which KHALIL EWAIS owned. In the following days, Contractor 3 soon began performing work on West 62nd Place.

45.     On or about October 28, 2016, KHALIL EWAIS sent an employee of Company 1 an unsigned copy of Task Order #72A to indicate that Company 1 should repave West 62nd Place under the Requirement Contract.

46.     On or about November 5, 2016, Contractor 3 completed the paving work on West 62nd Place. The new paving on West 62nd Place extended to the end of KHALIL EWAIS's parking lot and connected with an entrance to the parking lot, but the new paving did not extend to the additional few yards to reach the end of West 62nd Place and connect with the driveway at the end of it.

47.     On or about November 14, 2016, KHALIL EWAIS submitted and caused to be submitted the final Task Orders for West 62nd Place's repaving and ADA ramps to a Senior Budget and Management Analyst, and to KHALIL EWAIS's direct supervisor for review and approval. The role of the Senior Budget and Management Analyst and KHALIL EWAIS's direct supervisor was to verify whether there were the necessary funds available for the Task Orders, not to review whether the Task Orders themselves were for streets that were properly

9

included in the Requirement Contract, and both relied on information and advice that KHALIL EWAIS gave to them in representing the Task Orders as the products of the proper process for selecting streets to be included in the Requirement Contract, which advice and information KHALIL EWAIS gave knowing and intending that other City officials would rely on his advice and information.

48.     KHALIL EWAIS did not disclose to his direct supervisor, or any other City of Cleveland employee, (1) his personal interest in having West 62nd Place repaved or (2) that West 62nd Place had not actually been initially included—or later added—to the resurfacing program.

49.     On or about November 14, 2016, the Senior Budget and Management Analyst initialed the West 62nd Place Task Orders and KHALIL EWAIS's direct supervisor signed the West 62nd Place Task Orders, indicating that funds were available for the work.

50.     On or about December 13, 2016, the City paid Contractor 4 approximately $5,603 for the ADA ramp work on West 62nd Place related to Task Order 99B.  Approximately $294 was withheld by the City for retainage.  On or about March 30, 2017, the City paid Company 1 approximately $4,789 for the repaving work on West 62nd Place related to Task Order 81A. Approximately $252 was withheld by the City for retainage.

51.     From in or around August 2016, to in or around March 2017, in the Northern District of Ohio, Eastern Division, Defendant KHALIL EWAIS did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, KHALIL EWAIS obtained property and things of value not due to

him or his office, from Company 1 with their consent, under color of official right, and with

Company 1's consent induced by the wrongful use of fear of economic loss.

In violation of Title 18, United States Code, Section 1951.

COUNT 2

(Bribery in Federally Funded Programs, 18 U.S.C. § 666(a)(1)(B))

The Grand Jury further charges:

52.     The allegations contained in paragraphs 1 through 13 and 17 through 50 are

realleged and incorporated by reference as if fully set forth herein.

53.     From in or around August 2016, to in or around March 2017, in the Northern

District of Ohio, Eastern Division, Defendant KHALIL EWAIS, a public official and an agent

and employee of the City of Cleveland, other than as provided by law for the proper discharge of

official duties, did, and did attempt to, corruptly solicit, demand, accept, and agree to accept a

thing of value from a person, that is, the contracting services of Company 1 that were free or

priced well below market rates and rates offered to other customers, intending to be influenced

and rewarded in connection with a transaction and series of transactions involving the City of

Cleveland Mayor's Office of Capital Projects involving $5,000 or more, that is, the Requirement

Contract and other City of Cleveland business, both as requested and as future opportunities

arose.

In violation of Title 18, United States Code, Section 666(a)(1)(B).

COUNT 3

(Theft from a Program Receiving Federal Funds, 18 U.S.C. § 666(a)(1)(A))

The Grand Jury further charges:

54.     The allegations contained in paragraphs 1 through 13 and 17 through 50 are

realleged and incorporated by reference as if fully set forth herein.

55.     In or around 2016, KHALIL EWAIS, in his position as owner of Pioneer Engineering, solicited work from a private engineering client, Client 1.  Client 1 agreed to pay Pioneer Engineering approximately $5,650 to create engineering design plans for Client 1's business located on Lorain Avenue.

56.     KHALIL EWAIS used his position with the City to change the Lorain Avenue Rehabilitation plans to create the parking "bump out" or parking pull-off lane sought by Client 1. As a result, the City—not Client 1 or Pioneer Engineering—paid for the costs associated with adding the "bump out."  The total cost to the City for Client 1's "bump out" was approximately $10,000.

57.     In or around 2016, and continuing to in or around March 2017, in the Northern District of Ohio, Eastern Division, Defendant KHALIL EWAIS, being an agent and employee of the City of Cleveland, a political subdivision that received benefits of more than $10,000 in calendar years 2015, 2016, and 2017, under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance, embezzled, stole, obtained by fraud, without authority knowingly converted to the use of a person other than the rightful owner, and intentionally misapplied property worth at least $5,000 and owned by and under the care, custody, and control of the City of Cleveland, for KHALIL EWAIS's personal use and that of his family and friends, to wit: the West 62nd Place alleyway paving work and the Lorain Road bump out.

In violation of Title 18, United States Code, Section 666(a)(1)(A).

<u>COUNT 4</u>
(Wire Fraud, 18 U.S.C. § 1343)

58.     The allegations contained in paragraphs 1 through 13, 17 through 50, 55, and 56 are realleged and incorporated by reference as if fully set forth herein.

59.     Company 2 was a public utility company that provided electricity and related services to the public in Cleveland, Ohio, in the Northern District of Ohio, Eastern Division, and elsewhere.

60.     From time to time, Defendant KHALIL EWAIS, in the course of his official duties as an employee of the City, discussed City projects with public utility companies, including Company 2.

61.     KHALIL EWAIS knew that Company 2 required landowners and other private parties to cover some or all of the cost of construction projects that Company 2 undertook because of construction projects initiated by private parties.  Private construction projects for which Company 2 billed landowners included relocating or modifying equipment, such as utility poles and electric wires, to adapt Company 2's equipment to renovations initiated by landowners.

62.     KHALIL EWAIS also knew that Company 2 did not bill landowners for construction projects and other work Company 2 performed in conjunction with public projects, in particular, projects initiated by the City and other governmental entities.

63.     Company 2's distinguishing between private and public projects was one of the reasons KHALIL EWAIS communicated with Company 2, to inform Company 2 when public projects required work by or on behalf of Company 2.

64.     In addition to his official position with the City, KHALIL EWAIS also operated a side business as an engineer and engineering consultant for private parties, many of whom had projects within the City and thus required City approval and permits for their work, or otherwise had business with the City.  KHALIL EWAIS provided these engineering services to private clients through Pioneer Engineering, and he sometimes performed his Pioneer Engineering work

while he was supposed to be working for the City, and used City resources—including his City-owned computer and his official City email address—to work for private clients.

The Scheme

65.     From in or around April 2017, and continuing through in or around June 2017, in the Northern District of Ohio, Eastern Division, Defendant KHALIL EWAIS devised and intended to devise a scheme to defraud Company 2, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

66.     It was part of the scheme that:

a.      KHALIL EWAIS undertook to perform engineering services for a private client, Client 2, with whom KHALIL EWAIS had other personal business.  The services KHALIL EWAIS performed and agreed to perform concerned renovations of and improvements to a property at the intersection of Lorain Avenue and Melbourne Avenue, in Cleveland, Ohio, in the Northern District of Ohio, Eastern Division.

b.      As part of the construction project, Client 2 and KHALIL EWAIS sought to create additional street parking on Melbourne Avenue for customers of Client 2's business, and KHALIL EWAIS designed a parking pull-off where the street paving surface would be widened, and the sidewalk narrowed, by approximately the width of one automobile.  By widening the street paving, KHALIL EWAIS aimed to create convenient spaces for automobiles to pull over and park adjacent to Client 2's business.

c.      In conjunction with other aspects of Client 2's renovations, Company 2 had, at the request of Client 2, erected a utility pole for electric wires on Melbourne Avenue. The pole was installed on the sidewalk in a place where KHALIL EWAIS sought to replace sidewalk space with a parking pull-off.  Client 2 was billed for a portion of the cost of the utility

pole because the work was done in conjunction with a private project.  Client 2 and its representatives were aware of the plans for the pole installation.

   d.  KHALIL EWAIS knew that Client 2 would have to bear some or all of the cost of moving the utility pole and related equipment if the pole were to be moved to adapt the pole to the needs of a private project, but that Company 2 would bear the full cost of moving the utility pole and related equipment if the pole were moved to adapt the pole to the needs of a public City of Cleveland project.

   e.  In order to ensure that Company 2, and not KHALIL EWAIS's paying client, Client 2, would bear the cost of moving the utility pole, KHALIL EWAIS contacted representatives of Company 2, including from his City of Cleveland email address and using his official position and title.  In those communications, KHALIL EWAIS made a number of false and misleading statements that were intended to, and did, mislead representatives of Company 2 to believe that the parking pull-off plan was part of a public City of Cleveland construction project.

   f.  When Company 2 protested that it had very recently installed the pole at that site at the request of Client 2 in connection with a private project, and had done so in conformity with instructions and diagrams provided to the landowner or its agents before the pole was installed, KHALIL EWAIS continued to make statements that were intended to, and did, mislead representatives of Company 2 to believe that the parking pull-off was a public project, and that Company 2 alone should bear the cost of moving the utility pole.

<u>The Statutory Violation</u>

  67.  On or about June 13, 2017, in the Northern District of Ohio, Eastern Division, Defendant KHALIL EWAIS, for the purpose of executing the scheme described above, and

attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate commerce, any writing, sign, signal, and picture, to wit: an email sent from KHALIL EWAIS's City of Cleveland email address at or around 4:39 p.m., routed from the State of Ohio to a Google email server outside the State of Ohio before reaching Client 2's contractor, and also sent to an employee of Company 2 and others. The said email had a subject that purported to concern a "Pole Place[d] Incorrectly in the Public R/W [Right of Way]," and was addressed to a representative of Company 2. The said email stated that "The City has been working with the Developer at the above address for over a year to renovate this building and bring in some new tenants. There is a plan to implement a pull off lane off Melbourne Avenue to accommodate some parking requirements." The said email also stated that Company 2 had "placed a pole in the middle of the proposed parking area," and that "[t]his pole will need to be relocated so as not to hamper this improvement." The said email included KHALIL EWAIS's official City of Cleveland signature block, including his position as "Section Chief," "City of Cleveland," "Mayor's Office of Capital Projects," "Division of Engineering & Construction," as well as the official illustrated seal or emblem of the Mayor's Office of Capital Projects, with a banner that stated, "Building Cleveland."

In violation of Title 18, United States Code, Section 1343.

COUNT 5
(False Statement or Representation Made to a Department or
Agency of the United States, 18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

68.     The factual allegations of paragraphs 1 through 13, 17 through 50, 55, 56, and 59 through 66 are realleged and incorporated by reference as if fully set forth herein.

69.     From in or around April 2017, through on or about the date of this Indictment, the Federal Bureau of Investigation ("FBI") and the Internal Revenue Service, Criminal Investigations ("IRS-CI"), both of which are part of the executive branch of the Government of the United States, acting in a matter within their jurisdiction, were investigating Defendant KHALIL EWAIS, and others, in connection with their involvement and actions relating to KHALIL EWAIS's position with the City, including the repaving of West 62nd Place, and the information reported by KHALIL EWAIS, and others, on their federal income tax returns.

70.     From on or about April 21, 2017, through on or about the date of this Indictment, a Federal Grand Jury sitting in the Northern District of Ohio was conducting a criminal investigation, pursuant to its powers as set forth under Rule 6 of the Federal Rules of Criminal Procedure, into the activities of KHALIL EWAIS, and others, in connection with their involvement and actions relating to KHALIL EWAIS's position with the City, including the repaving of West 62nd Place, and the information reported by KHALIL EWAIS, and others, on their federal income tax returns.

71.     On or about December 6, 2017, a Special Agent of the FBI and a Special Agent of IRS-CI ("the Special Agents") interviewed KHALIL EWAIS in connection with the investigation.

72.     On or about December 6, 2017, in the Northern District of Ohio, Eastern Division, KHALIL EWAIS, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made the following materially false, fictitious, and fraudulent statements and representations to the Special Agents, that is: (1) a specific member of Cleveland City Council, Councilperson 1, wanted to add West 62nd Place to the road resurfacing list and (2) Councilperson 1 selected West 62nd Place to be repaved.  In

truth and in fact, and as KHALIL EWAIS then well knew, neither Councilperson 1, nor any

other Councilperson, wanted to add West 62nd Place to the road resurfacing list or selected West

62nd Place to be repaved.

73.     KHALIL EWAIS made the false statements described above with the intent to

corruptly obstruct, influence and impede and to attempt to obstruct, influence and impede the

FBI, IRS-CI, and Federal Grand Jury investigations described above.  KHALIL EWAIS's false

statements caused the Special Agents to perform additional investigation.

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNTS 6 – 9<br>(Making and Subscribing False Income Tax Returns, 26 U.S.C. § 7206(1))

The Grand Jury further charges:

74.     The factual allegations of paragraphs 1 through 13, 17 through 50, 55, 56, and 59

through 66 are realleged and incorporated by reference as if fully set forth herein.

75.     On or about the dates stated below, in the Northern District of Ohio, Eastern

Division, Defendant KHALIL EWAIS, a resident of Cleveland, Ohio, who was married, did

willfully make and subscribe U.S. Individual Income Tax Returns, Form 1040, for the calendar

years stated below, on behalf of himself and his spouse, each of which was verified by a written

declaration that it was made under the penalties of perjury and was filed with the Internal

Revenue Service, and each of which KHALIL EWAIS did not believe to be true and correct as to

every material matter in that, as he then and there well knew and believed, each return

understated his total income (on line 22) by failing to report income KHALIL EWAIS had that

year from rental income and other things of value, as a result of which each return understated

the amount of taxes owing for that year, each year constituting a separate count:

| COUNT | YEAR | APPROXIMATE DATE |
|:-----:|:----:|:----------------:|
| 6 | 2013 | February 24, 2014 |
| 7 | 2014 | February 13, 2015 |
| 8 | 2015 | February 19, 2016 |
| 9 | 2016 | February 27, 2017 |

All in violation of Title 26, United States Code, Section 7206(1).

COUNTS 10 – 14
(Making and Subscribing False Income Tax Returns, 26 U.S.C. § 7206(1))

The Grand Jury further charges:

76.     The factual allegations of paragraphs 1 through 13, 17 through 50, 55, 56, and 59 through 66 are realleged and incorporated by reference as if fully set forth herein.

77.     On or about the dates stated below, in the Northern District of Ohio, Eastern Division, Defendant ABDELJAWAD EWAIS, a resident of Cleveland, Ohio, who was married, did willfully make and subscribe U.S. Individual Income Tax Returns, Form 1040, for the calendar years stated below, on behalf of himself and his spouse, each of which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, and each of which ABDELJAWAD EWAIS did not believe to be true and correct as to every material matter in that, as he then and there well knew and believed, each return understated his total income (on line 22) by failing to report income ABDELJAWAD EWAIS had that year from rental income, as a result of which each return understated the amount of taxes owing for that year, each year constituting a separate count:

| COUNT | YEAR | APPROXIMATE DATE |
|:-----:|:----:|:----------------:|
| 10 | 2012 | February 8, 2013 |

| 11 | 2013 | January 29, 2014 |
| 12 | 2014 | February 17, 2015 |
| 13 | 2015 | February 4, 2016 |
| 14 | 2016 | March 12, 2017 |

All in violation of Title 26, United States Code, Section 7206(1).

<u>FORFEITURE</u>

The Grand Jury further charges:

78.     The allegations of Counts 1-4, inclusive, are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  As a result of the foregoing offenses, Defendant KHALIL EWAIS shall forfeit to the United States all property, real and personal, which constitutes, or is derived from, proceeds traceable to the commission of such offenses.

A TRUE BILL.

Original document  - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.